Richard A. SCHLEUSENER,
Plaintiff and Appellee,

v.

The SOUTH DAKOTA BOARD
OF REGENTS, Defendant
and Appellant.

Nos. 18003, 18021.

Supreme Court of South Dakota.

Considered on Briefs March 18, 1993.

Decided Sept. 22, 1993.

Rehearing Denied Oct. 21, 1993.

James W. Olson of Wilson, Olson, Nash, Becker & Smoot, P.C., Rapid City, for plaintiff and appellee.

James F. Shekleton, South Dakota Board of Regents, Pierre, Wayne F. Gilbert of Johnson Huffman, Rapid City, for defendant and appellant.

## PER CURIAM.

The South Dakota Board of Regents (hereinafter "Board") appeals a judgment determining the amount of pension payable to Richard A. Schleusener (hereinafter "Schleusener"). We affirm.

## FACTS

Schleusener was an employee of Board continuously from 1965 through 1987. He served as the Director of the Institute of Atmospheric Sciences for the South Dakota School of Mines and Technology (hereinafter "Mines") from 1965 through February of 1976. As an employee of Board at that time, he was a participant in Board's ordinary retirement plan, also known as the 1964 Banker's Life Plan. On July 1, 1975, he was appointed Acting President of Mines. He was formally appointed as President of Mines on March 1, 1976. He was successively reappointed as President of Mines on a yearly basis through 1987. As Acting President and President of Mines he was a participant in a special retirement plan provided by Board, which was called the President's Retirement Plan.

Schleusener was reappointed as President of Mines on June 26, 1986 at a salary of $65,520 for the year (July 1, 1986 through June 30, 1987). He accepted the appointment, but in the middle of the year gave notice that he would be retiring from the presidency effective February 28, 1987. When he retired, he received a lump sum payment for his accumulated but unused sick leave.

In May 1991, when Schleusener reached 65 years of age, he applied for his retirement benefits. Board computed his benefits based on his average salary during his final sixty months on the job. On June 10, 1991, Schleusener filed a complaint for declaratory relief asking the circuit court to declare that Board should have included his lump sum payment for accumulated but unused sick leave when they computed his retirement benefits. Board answered and denied his contention. The matter was set for trial on February 20, 1992.

On February 19, 1992, Board moved to strike certain arguments contained in Schleusener's trial brief on the grounds that they did not conform to the issues set forth in the Complaint. On the same day, Schleusener filed a motion requesting permission to file an amended complaint "to conform to the issues raised by the pleadings and discovery to date." The amended complaint renewed the claim from the initial complaint, but also added a second claim that Board should have calculated Schleusener's benefits based on his final five "Plan Years" of employment rather than his final sixty months on the job. The trial court denied Board's motion to strike and granted Schleusener's motion to file the amended complaint. Before starting the trial, the circuit court offered Board a continuance to prepare for the amended com-

plaint. Board specifically declined the offer of a continuance.

The trial court held that Board was correct in not including the lump sum payment for accumulated but unused sick leave in its calculation of benefits. The trial court held that Schleusener's benefits should have been calculated based on his contract salary during his final five "Plan Years" rather than his final sixty months of actual employment. Board appeals. Schleusener has filed a notice of review.

## DECISION

THE TRIAL COURT DID NOT ERR IN HOLDING THAT SCHLEUSENER'S BENEFITS SHOULD HAVE BEEN CALCULATED BASED ON HIS FINAL FIVE "CONTRACT YEARS."

The President's Retirement Plan provides a defined benefit to participants in the amount of fifty percent (50%) of their "Final Average Compensation." Section 2.8 of the President's Retirement Plan provides:

A Participant's "Final Average Compensation" is his average contract salary for the five Plan Years immediately preceding his termination of employment (including the Plan Year in which his termination occurs). For this purpose a Participant's contract salary for a particular Plan Year shall be the amount considered to be his annual salary for such year under the Basic Retirement Plan, without giving effect to any limitation on the amount recognized thereunder.

Throughout the text of the President's Retirement Plan, words and phrases which are defined in the plan are capitalized in the text. The phrase "average contract salary" used in section 2.8 is not defined in the text of the President's retirement plan but is said to be "his annual salary for such year under the Basic Retirement Plan ..." At all times relevant to this appeal, the terms of the President's Retirement Plan provided that the "Basic Retirement Plan" was the 1964 Banker's Life Plan. Unfortunately, the 1964 Banker's Life Plan does not define "annual salary."[1]

■ The trial court had to interpret the terms of the President's Retirement Plan. The trial court read the terms of the President's Retirement Plan and found them to be plain and unambiguous. On appeal, this Court can read a contract itself without any presumption in favor of the trial court's determination. *Baker v. Wilburn,* 456 N.W.2d 304, 306 (S.D.1990). We have reviewed the terms of the retirement plan and affirm the trial court's decision for the following reasons.

First, the President's Retirement Plan is a special retirement plan for university executives (i.e., university Presidents) who, like Schleusener, are hired on a yearly basis and are given a yearly salary. All other relevant terms in the President's Retirement Plan are based on Plan Years. With that in mind, it is clear the President's retirement plan was devised with that yearly appointment and salary in mind.

Second, section 2.8 provides that "Final Average Compensation" is the "average contract salary for the five Plan Years immediately preceding his termination of employment (*including the Plan Year in which his termination occurs*)." (emphasis added). That parenthetical clearly indicates that the contract salary of the employee's final plan year should be included.

Third, the President's Retirement Plan is a defined benefits plan in which the participants receive a preset benefit based on their "Final Average Compensation." In other words, the benefit bears no relation to the amount of contributions made by the participant. This is relevant because Board complains that the trial court's decision gives Schleusener a "windfall" because he is getting "credit" for salary he never earned. Board is ignoring the fact that since the President's Retirement Plan is a defined benefits plan, Schleusener's benefits are not dependent on contributions made by him.

■ Board contends the trial court erred because it should have used the parties' construction of the terms of the retirement plan. The rule relied on by Board provides that the

---

1. The 1964 Banker's Life Plan is an employee contribution plan. Benefits are based on how much the employee contributes and not on sala-

ry, which may explain why "annual salary" is not defined in that plan.

construction of a contract applied by the parties should be given great weight and should be adopted *if reasonable. Baker,* 456 N.W.2d at 308. The trial court held that the terms of the plan were clear and unambiguous that the benefits should be computed based on the last five "Plan Years."[2] It also held that any other construction of the contract would not be reasonable. We agree with that conclusion and note that the trial court did not find that Schleusener had applied any other construction to the contract.

In summary, the trial court applied and interpreted the terms of the President's Retirement Plan in the manner it found best fulfilled the intent of the Plan. It applied the plain and ordinary meaning of the terms and held that "five Plan Years" meant "five Plan Years" rather than "the last 60 months of employment." We affirm the trial court.

Having affirmed the trial court's decision we deem it unnecessary to address Schleusener's notice of review issue.

MILLER, C.J. and WUEST, HENDERSON, SABERS and AMUNDSON, JJ., participating.

---

2. If we were to find an ambiguity existed in this contract, under the precedent of this Court, the ambiguity "should be interpreted most strongly against the one who drafted the contract and caused the uncertainty to exist." *Heinert v. Home Fed. Sav. & Loan Ass'n.,* 444 N.W.2d 718 (S.D.1989).